IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| MOHAMMAD UMER KHAN ABBASI d/b/a LT SYSTEM,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JIPAL P. BHALODWALA, REALTIME NETWORKING, INC., and JOHN DOES 1-5,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　CIVIL ACTION NO. 5:15-CV-115 (MTT)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

The Defendants have moved to dismiss the Plaintiff's amended complaint (Doc. 6), or alternatively, have moved for a more definite statement. (Doc. 4). For the reasons stated below, the motion is **DENIED**.

## I.　　BACKGROUND[1]

Plaintiff Mohammad Abbasi created a "lottery ticket tracking tool," software called the Lottery Tracking System ("LTS"), for use in convenience stores, gas stations, and other locations where tickets are sold. (Doc. 6, ¶ 10). The Plaintiff owns the LTS and registered the software with the U.S. Copyright Office on August 10, 2010. (Doc. 6, ¶¶ 11-12). He has been marketing the software since February 2010 and licenses it to "numerous customers owning stores selling lottery tickets." (Doc. 6, ¶ 13). These customers "must agree to the terms of the End-User Licensing Agreement (the 'EULA')"

---

[1] The facts are taken from the allegations in the amended complaint (Doc. 6) and accepted as true for purposes of the motion.

before they are allowed to install the software.  (Doc. 6, ¶ 16).  The EULA informs the customer the software is copyrighted and "contains an agreement that the customer will not 'reverse engineer, decompile, or disassemble the software product.'"  (Doc. 6, ¶ 17).

In December 2012, the Plaintiff licensed the LTS software to "Sunny Milledgeville," the owner of a Stop N Save convenience store at 844 Montgomery St. in Milledgeville.  (Doc. 6, ¶ 18).  Sunny received 138 minutes of phone service between December 5, 2012 and January 5, 2013 to explain the LTS software and system.  (Doc. 6, ¶ 19).  On December 21, 2012, the Plaintiff was notified of an improper login attempt into the Google email account he used for the LTS from an IP address in Milledgeville.  (Doc. 6, ¶ 20).  The Plaintiff then learned that Defendant RealTime had begun selling an application, "substantively identical" to the LTS, which also tracked lottery ticket sales.  (Doc. 6, ¶ 21).  Defendant "RealTime's web page show[s] images that have been copied directly from Plaintiff's copyrighted software."  (Doc. 6, ¶ 21).  Defendant Bhalodwala owns Defendant RealTime, and the contact information on RealTime's website is the address of the Stop N Save store in Milledgeville and Sunny Milledgeville's email address and phone number.  (Doc. 6, ¶¶ 22-23).  This is also the phone number through which the Plaintiff provided telephone service for his software.  (Doc. 6, ¶ 23).  In other words, Sunny Milledgeville is Defendant Bhalodwala or an agent acting on his behalf.  (Doc. 6, ¶ 24).

The Defendants call their "substantively identical" software application the "Lottery Tracking App" or "Lottery Tracking System" in their written materials and in communications with potential customers, who are also potential customers of the Plaintiff's software.  (Doc. 6, ¶ 27).  The Plaintiff alleges he "has received calls from his

customers who have been approached by Defendants and to whom Defendants have held their product out as the [LTS]." (Doc. 6, ¶ 28).

Given the Defendants' alleged conduct, the Plaintiff has asserted a copyright infringement claim, an unfair competition claim pursuant to the Lanham Act, and various state law claims, including violations of the Georgia Fair Business Practices Act, fraud, tortious interference with business relations, unjust enrichment, breach of contract, and litigation expenses.[2]

## II.  DISCUSSION

### A. Motion to Dismiss Standard

The Federal Rules of Civil Procedure require a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[C]onclusory

---

[2] The Plaintiffs have also alleged a violation of the Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 *et seq.* in Count IV. (Doc. 6, ¶¶ 54-59). The Defendants have only mentioned this claim in the introduction to their motion to dismiss and have not provided supporting facts or law in the motion explaining why this claim should be dismissed. (Doc. 4 at 2). Such a bald assertion does not suffice for a motion to dismiss. Accordingly, this claim may proceed.

allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993).

### B. Analysis

The Defendants first argue the complaint should be dismissed as a "shotgun" pleading because (1) it includes an "Allegations Common to all Claims for Relief" section instead of identifying which facts are applicable to which claims, (2) each count incorporates allegations, and (3) the counts do not establish which counts apply to Defendant Bhalodwala and which apply to Defendant Realtime Networking, LLC.  (Doc. 4 at 5-6).  The Eleventh Circuit has described a shotgun pleading as one where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).  As discussed more fully below, all of the Plaintiff's counts are based on a common factual scenario, and each Defendant is purportedly liable under each count.  Therefore, it is possible to determine which allegations of fact are intended to support which claims for relief, and dismissal on this ground is not warranted.

### 1. Copyright Infringement

To establish direct copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work

- 4 -

that are original."³ *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). To satisfy the second element, "a plaintiff must establish, as a factual matter, that the alleged infringer *actually copied* plaintiff's copyrighted material." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010) (emphasis added); *see also Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996) ("To prove actionable copying, the plaintiff must first establish, as a factual matter, that the alleged infringer actually used the copyrighted material to create his own work." (internal citation omitted)). A plaintiff may prove copying by direct evidence, which is rare, or indirect evidence. *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir.2010). If the plaintiff must rely on indirect evidence and cannot show the defendant had access to the copyrighted work, then the plaintiff must show the defendant's work is "strikingly similar" to the copyrighted work. *Id.* (citing *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007)). However, if the defendant *did* have access to the work, then the plaintiff need only show the protected expression in the original work is "substantially similar" to the second. *Id.* (citing *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1214 (11th Cir. 2000)). "To determine whether an allegedly infringing work is substantially similar to a copyrighted work, we ask whether 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" *Id.* (quoting *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1224 (11th Cir. 2008)). "Importantly, … copyright infringement only occurs when the defendant copies *protected* elements of a copyrighted work, those portions satisfying the constitutional requirement of originality." *Indyne, Inc. v. Abacus Tech. Corp.*, 876 F. Supp. 2d. 1278, 1284 (M.D.

---

³ The Defendants do not contend the Plaintiff has failed to sufficiently allege ownership of a valid copyright.

Fla. 2012) (emphasis added) (citing *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1554 (11th Cir. 1996)).

The Defendants contend the Plaintiff's copyright infringement claim should be dismissed because the Plaintiff failed to sufficiently allege facts to demonstrate "access" or "substantial similarity" to satisfy the second element of a copyright infringement claim. (Doc. 4 at 7). The Court disagrees. First, the allegations, taken as true, demonstrate that the Plaintiff granted the Defendants access by providing the actual software, the copyrighted material at issue, directly to them. (Doc. 6, ¶¶ 19, 22-24). Second, because the Plaintiff has sufficiently alleged access, he need only also sufficiently allege that the Defendants' software is "substantially similar" rather than "strikingly similar" to his copyrighted software, which he does. *Cf. Baby Buddies, Inc.*, 611 F.3d at 1315 (noting that the analysis turned on substantial similarity when the defendant had access to the copyrighted work). Considering together the allegations that the Defendants received access to the copyrighted software, sold an application that performs "substantively identical" functions to the Plaintiff's copyrighted software, and used images from the Plaintiff's software in their own program, the Court concludes that the Plaintiff has also sufficiently alleged "substantial similarity." *Cf. Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir. 1982) ("[P]roof of access and substantial similarity raises … a presumption of copying…."); *compare Dixon v. Sony Corp. of Am.*, 2012 WL 1886550, at *3 (S.D. Fla.) (dismissing copyright infringement claim for lack of substantial similarity where the complaint did not "allege specifically what aspects of Defendant's work encompasses Plaintiff's particular

expression"). Therefore, the Plaintiff sufficiently pleaded the second element of a copyright infringement claim.[4]

### 2. Unfair Competition

The Plaintiff asserts a claim for unfair competition pursuant to section 43 of the Lanham Act, as codified in 15 U.S.C. § 1125(a). The Defendants contend the Plaintiff has failed to state a claim because he fails to refer to a specific subsection of § 1125(a).[5] (Doc. 4 at 10). There are two types of claims under § 1125(a): likelihood of confusion and false advertising. Here, the Plaintiff is alleging a likelihood of confusion claim under 15 U.S.C. § 1125(a)(1)(A). (Docs. 5 at 9; 6, ¶ 42-44). The Plaintiff's unfair competition claim is clearly that customers will be confused about the source of the program they are purchasing. (*Id.*).

"In order to state a claim for … unfair competition under the Lanham Act, [the Plaintiff] must demonstrate that (1) [he] has a valid, protectable mark, and (2) Defendants' use of the mark is 'likely to cause confusion, or to cause mistake, or to deceive.'" *TracFone Wireless, Inc. v. Zip Wireless Prods., Inc.*, 716 F. Supp. 2d 1275, 1283 (N.D. Ga. 2010) (quoting 15 U.S.C. §§ 1114(1)).

> To satisfy the first element of § 43(a)—proof of a valid trademark—a plaintiff need not have a registered mark. We have recognized that "the use of another's unregistered, *i.e.*, common law, trademark can constitute a violation of § 43(a) where the alleged unregistered trademarks used by

---

[4] The Defendants also argue that the Plaintiff has not sufficiently alleged that "Lottery Artificial Intelligence" is strikingly similar to the LTS. (Doc. 4 at 8). In fact, the Plaintiff does not mention striking similarity in his amended complaint at all (although it seems he could have), no doubt because he has alleged that the Defendants had access to the software, and therefore, he only needs to allege substantial similarity. *See Baby Buddies, Inc.*, 611 F.3d at 1315. Thus, it is not necessary to address the Defendants' argument that the Plaintiff has failed to sufficiently allege a striking similarity between the two programs.

[5] The Defendants also moved to dismiss because the Plaintiff did not plead the LTS is a "Famous Mark" under § 1125(c). (Doc. 4 at 12). However, the Plaintiff did not intend to assert a claim under § 1125(c), and he does not assert this claim in the amended complaint. (Doc. 5 at 9).

- 7 -

the plaintiff are so associated with [his] goods that the use of the same or similar marks by another company constitutes a false representation that [their] goods came from the same source."

*Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010) (quoting *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512-13 (11th Cir. 1984)).

However, the mark must be sufficiently distinctive to receive protection under the Lanham Act.  *Id.*  To be sufficiently distinctive, a mark must be "capable of distinguishing the owner's goods from those of others."  *Id.*  There are four categories of distinctiveness in the Eleventh Circuit:

> (1) generic—marks that suggest the basic nature of the product or service; (2) descriptive—marks that identify the characteristic or quality of a product or service; (3) suggestive—marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful—marks that bear no relationship to the product or service, and the strongest category of trademarks.

*Tana*, 611 F.3d at 774 (quoting *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 797-98 (11th Cir. 2003)).  "These categories create a distinctiveness spectrum."  *T-12 Entm't, LLC v. Young Kings Enters.*, 36 F. Supp. 3d 1380, 1389 (N.D. Ga. 2014).  Marks in the first category generally do not receive trademark protection, while marks in the third and fourth categories generally do.  *Id.*  Marks in the second category will receive protection when they acquire "secondary meaning."  *Tana*, 611 F.3d at 774.  "A name has acquired secondary meaning when the primary significance of the term in the minds of the consuming public is not the product but the producer."  *Id.* (quoting *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007)).

To evaluate the second element, whether there is a likelihood of confusion, courts consider the following seven factors:

> (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion.

*All. Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000). "[T]he geographic proximity of the use of the parties' marks … may be relevant to the likelihood-of-confusion analysis," as well. *Tana*, 611 F.3d at 780. "To adequately plead this element of a prima facie case[, the Plaintiff] need only offer enough facts to make a likelihood of confusion possible." *T-12 Entm't*, 36 F. Supp. 3d at 1391.

Here, the Defendants argue the Plaintiff's mark is weak because it is "descriptive at best," simply describing what the software does. (Doc. 7 at 6). They further contend that there is no similarity between the two marks and that there are insufficient allegations of actual confusion. (*Id.* at 5).

The Court disagrees. The Plaintiff has alleged sufficient facts for an unfair competition claim under the Lanham Act. The Plaintiff contends he has a valid and protectable mark because he has used the mark since February 2010 and the name "Lottery Tracking App" has acquired secondary meaning. (Doc. 6, ¶¶ 27, 28, 41, 42). This is sufficient for the first element of the claim. The Plaintiff further contends that there is a likelihood of confusion because he has been approached by customers who received information about the Defendants' product. (*Id.* ¶ 28). This is sufficient to meet the "likelihood of confusion" element. Therefore, the Plaintiff has stated a claim for unfair competition under the Lanham Act.

### 3. Georgia Fair Business Practices Act

The Plaintiff asserts a violation of the Georgia Fair Business Practices Act ("FBPA"), O.C.G.A. § 10-1-390 *et. seq.*, by the Defendants' choice of name, advertising, marketing, and general business practices. (Doc. 6, ¶ 53). The Plaintiff contends the Defendants' actions "amount[] to passing of[f] Defendants' goods as Plaintiff['s] and/or will confuse the public as to source, sponsorship, approval, affiliation, or association with Plaintiff." (Doc. 5 at 10). The Defendants claim the Plaintiff has failed to allege sufficient facts to support a violation of the FBPA and to identify upon which portion of O.C.G.A. § 10-1-390 he relies. (Doc. 4 at 13). The Plaintiff, however, asserts that his claim is based on the same facts as his Lanham Act claim and that the entire FBPA is interrelated and applicable. (Doc. 5 at 10).

"The FBPA protects businesses from unfair or deceptive practices in the conduct of trade or commerce, including passing off goods or services as those of another, or causing actual confusion as to the source, sponsorship, approval, or certification of goods or services." *Inkaholiks Luxury Tattoos Ga., LLC v. Parton*, 324 Ga. App. 769, 770, 751 S.E.2d 561, 563 (2013). The Plaintiff has asserted that the Defendants' conduct is deceptive because they pass off their product as the Plaintiff's product, which has caused actual confusion among consumers as to the source of the product. (Doc. 6, ¶¶ 27, 28, 53). This is sufficient to state a claim under the FBPA.

### 4. Tortious Interference with Business Relations

To maintain a claim for tortious interference with business relations, a plaintiff must prove:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the

> intent to injure; (3) the defendant induced a breach of a contractual obligation or caused a party or a third party to discontinue or fail to enter into an anticipated relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*Onbrand Media v. Codex Consulting, Inc.*, 301 Ga. App. 141, 150, 687 S.E.2d 168, 176 (2009). "[I]mproper conduct means wrongful action that generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions." *Gordon Document Prods. v. Serv. Techs., Inc.*, 308 Ga. App. 445, 449, 708 S.E.2d 48, 53 (2011) (quoting *Disaster Servs. v. ERC P'ship*, 228 Ga. App. 739, 741-42, 492 S.E.2d 526, 529 (1997) (punctuation omitted)).

The Plaintiff alleges the Defendants "marketed their infringing product to the same customers with whom Plaintiff is doing or has done business[ and that the] Defendants marketed their application using the same trademarks as Plaintiff, to the same customers who would license Plaintiff's software." (Doc. 6, ¶¶ 64-65). The Plaintiff further contends that the "Defendants have engaged in fraud or misrepresentation by improperly using Plaintiff's [c]opyrighted images and trademarks[] and that Defendants have misused Plaintiff's confidential information by copying or modifying [his] software." (Doc. 5 at 12). The Defendants assert that the Plaintiff has not alleged that they "acted improperly to induce a third party not to enter into or continue a business relationship with Defendants," so he has not met one prong of the prima facie case for tortious interference because "improper conduct" entails tactics that may include fraud, misrepresentation, and use of confidential information, among other actions. (Doc. 4 at 15-16).

The Court disagrees. The Plaintiff has alleged the Defendants acted improperly by fraud, misrepresentation, and the use of his confidential information. (Docs. 5 at 11-12; 6, ¶¶ 25, 65). He contends that customers thought they were doing business with the Plaintiff when they were actually doing business with the Defendants and that the Defendants "induced third parties not to enter into or continue a business relationship with Plaintiff. . . ." (Doc. 6, ¶¶ 28, 66). This is sufficient to meet the "improper conduct" prong of a claim for tortious interference.

### 5. Fraud

The Plaintiff asserts the Defendants have engaged in unfair competition and copyright infringement, constituting fraud under O.C.G.A. § 23-2-55. (Doc. 6, ¶¶ 61-62). The Defendants contend that the Plaintiff has not asserted sufficient facts to support a claim for unfair competition or that demonstrate an intent to deceive the public, which is required for relief pursuant to O.C.G.A. § 23-2-55. (Doc. 4 at 15).

O.C.G.A. § 23-2-55 states that "[a]ny attempt to encroach upon the business of a … person by the use of similar trademarks, names, or devices, with the intention of deceiving and misleading the public, is a fraud for which equity will grant relief." "Any conduct the nature and probable tendency and effect of which is to deceive the public so as to 'pass off' the goods or business of one person as and for the goods or business of another constitutes a violation of O.C.G.A. § 23-2-55." *Morton B. Katz & Assocs., Ltd. v. Arnold*, 175 Ga. App. 278, 279, 333 S.E.2d 115, 116 (1985) (quoting *Atlanta Paper Co. v. Jacksonville Paper Co.*, 184 Ga. 205, 213, 190 S.E. 777, 783 (1937)). "Relief under this section 'depends upon an intent to deceive.'" *Id.* (citation omitted).

The Plaintiff's allegation that the Defendants refer to their app as "Lottery Tracking App" or "Lottery Tracking System" rather than "Lottery Artificial Intelligence" is sufficient to show an intent to deceive.  (Doc. 5 at 11).  Moreover, "[t]he federal Lanham Act analysis governs the analysis of Plaintiff's state law trademark claims under O.C.G.A. § 23-2-55…." *Valencia v. Universal City Studios LLC*, 2014 WL 7240526, at *5 (N.D. Ga.); *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition.").  Therefore, because the Plaintiff stated a claim under the Lanham Act, the Plaintiff has also stated a state law claim for fraud under O.C.G.A. § 23-2-55.

### 6. Unjust Enrichment

The elements of a claim for unjust enrichment are: "(1) a benefit has been conferred, (2) compensation has not been given for receipt of the benefit, and (3) the failure to so compensate would be unjust."  *Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1309 (N.D. Ga. 2012).  The Defendants contend the Plaintiff has not alleged that a benefit was conferred or any facts that support the allegation that the Defendants have benefitted from the alleged misappropriation.  (Doc. 7 at 8).

The Court disagrees.  The Plaintiff alleges he "conferred a benefit on Defendants by providing a well-known and well-respected brand under [which] Defendants are marketing their product, but Defendants provided no compensation to Plaintiff for this benefit."  (Doc. 6, ¶ 70).  The Plaintiff further asserts that the Defendants have benefitted from the misappropriation because they "have capitalized on Plaintiff['s] work by marketing their application under Plaintiff['s] brand, and by using Plaintiff's brand to

entice consumers." (*Id.* ¶ 69).  This is sufficient to state a claim for unjust enrichment.  *Cf. SCQuARE Intern., Ltd. v. BBDO Atlanta, Inc.*, 455 F. Supp. 2d 1347, 1373 (N.D. Ga. 2006) (denying summary judgment when there was a question of fact about whether one party had benefitted as a result of an allegedly unauthorized endorsement).

### 7. Breach of Contract

The Defendants contend that the "Plaintiff only alleges that Defendants used the software and received customer support," which is not sufficient to state a claim for breach of contract because this allegation does not "plausibly amount to reverse engineering, disassembling or decompiling the software." (Doc. 4 at 17).  However, the Plaintiff specifically alleges the "Defendants have reverse engineered, decompiled, and/or disassembled the [Plaintiff's] software to create their infringing application" in violation of the EULA.  (Doc. 6, ¶ 75).  This allegation is sufficient to state a claim for breach of contract.

### 8. Attorney's Fees and Costs

O.C.G.A. § 13-6-11 authorizes attorney's fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense."  The Plaintiff asserts he is entitled to attorney's fees and costs under this code section.  (Doc. 6 at 12).  The Defendants contend this count should be dismissed because it is derivative of the other counts, which they believe should also be dismissed.  Because other counts are going forward, this one may go forward, as well.

### III.   CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss is **DENIED**.  (Doc. 4).

**SO ORDERED**, this the 3rd day of December, 2015.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT